UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-60274-RAR

UNITED STATES OF AMERICA

vs.

BENJAMIN DEVEREAUX DOTEN,

    Defendant.
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING THE GOVERNMENT'S MOTION FOR AN ORDER REQUIRING THE INVOLUNTARY MEDICATION OF DEFENDANT

**THIS CAUSE** comes before the Court upon Magistrate Judge Jared M. Strauss's Report and Recommendation on the Government's Motion for an Order Requiring the Involuntary Treatment of the Defendant to Restore the Defendant's Competency ("Report"), [ECF No. 83], filed on September 18, 2023; Magistrate Judge Strauss's May 15, 2023 Order Granting the Motion for a Finding that the United States has an Important Governmental Interest Supporting Involuntary Medication to Restore Defendant's Competency ("Order"), [ECF No. 62]; and Defendant's Objection to the Magistrate Judge's Report and Recommendation ("Objection"), [ECF No. 86]. In his Report, Magistrate Judge Strauss incorporated the Order, and recommended that the Court grant the Government's Motion for an Order Requiring Involuntary Treatment of Defendant to Restore Defendant's Competency ("Motion"), [ECF No. 75].

The Court having reviewed the Order, the Report, the record, and being otherwise fully advised, hereby **ADOPTS** the Report as **MODIFIED** below, **GRANTS** the Government's Motion, and **OVERRULES** Defendant's Objection.

## BACKGROUND

From March 2021 through August 2021, Defendant, Benjamin Devereaux Doten, called the Federal Bureau of Investigation's ("FBI") Miami and West Palm Beach offices more than

1,000 times. He also directed a series of threating Tweets at the FBI and its agents. The frequency and nature of these calls caused the FBI call takers to fear for their safety. As a result, Defendant was arrested pursuant to a Criminal Complaint on August 24, 2021, [ECF No. 1], and on September 21, 2021, a federal grand jury returned an Indictment with two counts of Cyber Harassment, in violation of 18 U.S.C. § 2261A, and two counts of Interstate Threat, in violation of 18 U.S.C. § 875(c). [ECF No. 22]. Each count carries a statutory maximum penalty of five years imprisonment. Defendant has been in custody since his arrest on August 24, 2021. Order at 2.

In December 2021, this Court granted Defendant's unopposed motion for a competency evaluation by the Bureau of Prisons (BOP), pursuant to 18 U.S.C § 4241. [ECF No. 36]. After receiving a Competency Evaluation and Examination Report from the BOP, [ECF No. 39], and holding a status conference with the parties on March 8, 2022, the Court ordered that the BOP hospitalize Defendant for treatment to restore competency, if possible. [ECF No. 41].

Defendant was admitted to the Federal Medical Center Butner ("FMC Butner") on November 1, 2022. Order at 2. On February 24, 2023, Dr. Brianna Grover, a forensic psychologist from the BOP, issued a report indicating that Defendant is suffering from a mental disease or defect, specifically schizoaffective disorder, which interferes with his ability to rationally understand the proceedings against him, communicate effectively with counsel, assist in his own defense, rationally evaluate evidence, and testify relevantly. [ECF No. 51] at 19–20. Dr. Grover accordingly opined that Defendant was not competent to stand trial. *Id*. at 20. Dr. Grover further opined there is a substantial probability that Defendant's competency can be restored via appropriate treatment with antipsychotic medication—and restoration of competency is unlikely without such treatment. *Id*. However, Defendant has refused such treatment. *Id*.

On April 10, 2023, the Government filed a Motion for Psychiatric Treatment and Important Governmental Interests Pursuant to *Sell v. United States* ("Governmental Interest Motion"), [ECF

No. 56], which sought a determination from this Court that the Government has an "important interest" in bringing Defendant to trial—the first of four factors articulated by the Supreme Court in *Sell v. United States*, 539 U.S. 166 (2003). The *Sell* factors comprise those factors the Government must establish to administer antipsychotic drugs involuntarily to a mentally ill criminal defendant in order to render him competent to stand trial. *See generally id.*

On April 20, 2023, this Court referred the Governmental Interest Motion to Magistrate Judge Strauss for determination. On May 11, 2023, Magistrate Judge Strauss held an evidentiary hearing on the Governmental Interest Motion, and on May 15, 2023, entered an order granting said Motion. After Magistrate Judge Strauss entered the order, Dr. Charles Cloutier, a staff psychiatrist at FMC Butner, prepared a Forensic Evaluation Addendum dated June 12, 2023, which details a proposed treatment plan and addresses issues related to the remaining *Sell* factors. [ECF No. 66]. As indicated in the treatment plan, Dr. Cloutier opines, with "reasonable medical certainty," that: (1) "[a]dministration of involuntary antipsychotic medication to [Defendant] is substantially likely to render him competent to stand trial and is substantially unlikely to interfere with his ability to assist his counsel"; (2) "less intrusive treatments will not achieve the same results"; and (3) "it is clinically appropriate and indicated to treat [Defendant's] psychotic illness with antipsychotic medication." Report at 3 (citing [ECF No. 66] at 6).

Consequently, on August 8, 2023, the Government filed the instant Motion requesting that this Court find the remaining *Sell* factors satisfied and order the involuntary administration of antipsychotic medication to Defendant, which the Court also referred to Magistrate Judge Strauss. [ECF No. 76]. On September 11, 2023, Magistrate Judge Strauss held an evidentiary hearing on the Government's Motion. [ECF No. 82]. He took testimony from Dr. Grover and Dr. Cloutier, and heard arguments from defense counsel and the Defendant's guardian ad litem. On September 18, 2023, Magistrate Judge Strauss issued his Report recommending the Government's Motion be

granted. [ECF No. 83]. In his Report, Magistrate Judge Strauss considered the estimated four to eight months that Dr. Cloutier testified it may take to restore Defendant to competency. Report at 11-13. Moreover, Magistrate Judge Strauss also noted the relevance of the restoration period, warning "it may be appropriate to revisit th[is] ruling if the Defendant is not restored to competency within 8 months." *Id.* at 13. The Report also pointed out that if Defendant were restored to competency within eight months, then Defendant's period of incarceration would fall within the Government's estimate of Defendant's sentencing guideline range. *Id.* at 13 n.5. Notably, after the issuance of the Report, the Warden at FMC Butner sent a letter dated September 21, 2023 ("Letter"), [ECF No. 88], informing the Court that the evaluation period for Defendant is expected to end on March 16, 2024, with a final report to be issued to the Court within 14 working days of that date.

On October 2, 2023, Defendant filed an objection to Magistrate Judge Strauss's Report, [ECF No. 86], in which Defendant objects to the Report's conclusion that the Government be permitted to forcibly medicate him. Specifically, Defendant maintains that the "Magistrate Judge erred in refusing to consider the delay that would ensue in the Government's attempt to restore Mr. DOTEN to competency as a special circumstance that outweighs the Government's interest." Objection at 3.

## **LEGAL STANDARD**

A district court reviewing a magistrate judge's report and recommendation "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Macort v. Prem, Inc.*, 208 F. App'x 781, 783-84 (11th Cir. 2006). The district court "may accept, reject or modify, in whole or in part, the findings of the recommendations made by the magistrate judge." *Id.*; *see also* FED. R. CRIM. P. 59(b)(3); *Thomas v. Arn*, 474 U.S. 140, 149-50 (1985). "[I]n determining

whether to accept, reject, or modify the magistrate's report and recommendations, the district court has the duty to conduct a careful and complete review." *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982)). Legal conclusions are subject to *de novo* review, even if no party specifically objects. *See U.S. v. Keel*, 164 F. App'x 958, 961 (11th Cir. 2006); *U.S. v. Warren*, 687 F.2d 347, 348 (11th Cir. 1982).

## ANALYSIS

The Court begins by examining the first prong of *Sell* to explain why it is satisfied by clear and convincing evidence in accordance with the Magistrate Judge's Report, adding additional law and analysis where appropriate. The Court then turns to explain why Defendant's Objection to the Report fails. The Court concludes with specific instructions and timing related to its Order allowing the involuntary medication of Defendant to restore competency to stand trial, provided Defendant continues to refuse voluntary treatment after entry of this Order.

### I. The *Sell* Factors

In deciding whether to order involuntary medication, *Sell* directs Courts to assess: (1) whether there is an important Government interest at stake in bringing to trial an individual accused of a serious crime; (2) whether treatment is substantially likely to restore defendant to competency, and whether treatment is substantially unlikely to have serious side effects which would interfere with the defendant's ability to assist his attorney in conducting a trial defense; (3) whether the treatment is necessary to further the Government's interest at stake, and whether there are less intrusive alternatives to achieve the result (*i.e.*, to restore competency); and (4) whether treatment with psychotropic medication is medically appropriate. *See Sell*, 539 U.S. at 180–181. The Government bears the burden of proof on factual findings needed to support involuntary medication and satisfies that burden by clear and convincing evidence. *United States v. Diaz*, 630 F.3d 1314, 1332 (11th Cir. 2011).

As to *Sell* prongs two, three, and four, the Court adopts the Magistrate Judge's Report and Recommendation in full without modification. Report 13–19. However, because Defendant's sole objection concerns *Sell's* first prong, the Court provides additional analysis below.

### A. The Government's Interest

The first prong of *Sell* requires courts to ask whether there is an important Government interest at stake in bringing to trial an individual accused of a serious crime. 539 U.S. at 180. In both his May 15, 2023 Order and Report, Magistrate Judge Strauss concluded that the facts here satisfy the first prong of *Sell*. Order 5–13; Report at 13. The Court agrees.

#### 1. Seriousness of the Offense

"The Government's interest in bringing to trial an individual accused of a serious crime is important." *Sell*, 539 U.S. at 180. The Eleventh Circuit has not definitively determined whether statutory maximum or advisory sentencing guideline penalties are the better measure of the seriousness of a crime in the *Sell* context. *United States v. Rodriguez*, 281 F. Supp. 3d 1284, 1295 (S.D. Fla. 2017); *see also United States v. Fuller*, 581 F. App'x. 835, 836 (11th Cir. 2014) (upholding district court's finding that the facts of a particular case supported the conclusion that the crime was serious). And there is disagreement among the circuits as to whether district courts should consider the maximum penalty, the sentencing guideline range, a combination of the two, or the facts of the particular case in assessing whether a crime is serious pursuant to *Sell*. *See, e.g., United States v. White*, 620 F.3d 401, 410-11 (4th Cir. 2010) (considering only the maximum penalty); *United States v. Green*, 532 F.3d 538, 549 (6th Cir. 2008) (same); *United States v. Palmer*, 507 F.3d 300, 304 (5th Cir. 2007) (indicating that the maximum penalty, rather than the guideline range is the appropriate consideration to determine whether a crime is serious); *United States v. Hernandez-Vasquez*, 513 F.3d 908, 919 (9th Cir. 2008) (stating that "the likely guideline range is the appropriate starting point for the analysis of a crime's seriousness"); *United States v.*

*Valenzuela-Puentes*, 479 F.3d 1220, 1226 (10th Cir. 2007) (considering both the maximum penalty and the "likely" guideline range); *United States v. Mackey*, 717 F.3d 569, 573 (8th Cir. 2013) ("[W]e agree with those circuits that place the greatest weight on the maximum penalty authorized by statute.").

"Courts that favor the statutory maximum yardstick tend to look with disfavor upon the Sentencing Guidelines as a measure of seriousness." *Rodriguez*, 281 F. Supp. 3d at 1294. This is especially true because the Sentencing Guidelines are not determined with certainty until after a defendant has been convicted and are not binding on the court, *id.*, and instead reflect the views of the Sentencing Commission rather than Congress, *see, e.g.*, *United States v. Evans*, 404 F.3d 227, 238 (4th Cir. 2005) (this approach would be "unworkable because at this stage in the proceedings, there is no way of accurately predicting what [the Guideline] range will be").

Consistent with this approach, district courts in the Eleventh Circuit often allot significant weight to the maximum penalty that a defendant faces in assessing the seriousness of an offense. *See, e.g., United States v. Ruark*, No. 1:10-cr-160-ODE-GGB, 2014 WL 4966913, at *7 (N.D. Ga. Oct. 2, 2014) ("Although *Sell* gives scant guidance for determining the seriousness of a crime, the statutory maximum penalty authorized for the charged offense is a helpful measure."), *aff'd*, 611 F. App'x 591, 598 (11th Cir. 2015); *United States v. Gillis*, No. 3:11-cr-18-J-34JBT, 2011 WL 7109362, at *5 (M.D. Fla. Nov. 30, 2011) ("Here, in the absence of controlling Eleventh Circuit authority and noting that the guidelines are only advisory, the undersigned applies the 'maximum penalty' test in determining that the crime with which [the] [d]efendant is charged is serious."); *Rodriguez*, 281 F. Supp. 3d at 1295 (finding "the best objective measure is the maximum penalty authorized by statute," and concluding, in relevant part, that "the possible two-year statutory term of incarceration is a sufficiently lengthy period of incarceration to mark the offense as serious.").

The Court is persuaded that the statutory maximum is the best measure of seriousness and Defendant's offense thus qualifies as "serious" under *Sell*. Defendant faces a statutory maximum sentence of five years if convicted on any one of the four counts.[1] Moreover, as noted by Magistrate Judge Strauss, several other courts have already found that offenses under 18 U.S.C. § 875 qualify as "serious." *See* Order at 6 (citing *United States v. Nicklas*, 623 F.3d 1175 (8th Cir. 2010); *United States v. Seaton*, 773 F. App'x 1013, 1017 (10th Cir. 2019)). Accordingly, the Court finds that the crime qualifies as serious under the first prong of *Sell*.

### 2. *Special Circumstances*

Although the Court finds that the Government has an important interest in prosecuting the instant offense given its sufficiently serious nature, *Sell* also requires a court to determine whether "[s]pecial circumstances" undermine the importance of that interest. *Sell*, 539 U.S. at 180. A court "must consider the facts of the individual case in evaluating the Government's interest in prosecution." *Id.*; *see also United States v. Pfeifer,* 661 F. App'x 618, 620 (11th Cir. 2016). Special circumstances that may diminish the importance of the Government's interest include "the possibility that the defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed . . . .)." *Sell*, 539 U.S. at 180; *see also United States v. Bradley*, 417 F.3d 1107, 1116 (10th Cir. 2005) (stating "[a]s we read *Sell*, this . . . example suggests that when the amount of time the defendant is confined pending

---

[1] The Court recognizes that Defendant is charged with four counts: two counts of Cyber Harassment in violation of 18 U.S.C. § 2261A and two counts of Interstate Threat in violation of 18 U.S.C. § 875(c). The statutory maximum penalty for *each* of these four counts is five years, for a total of 20 years. For simplicity's sake, the Court sets a five-year statutory maximum as the baseline for determining whether the crime is "serious" for purposes of *Sell*. In doing so, the Court assumes concurrent sentences in the event of conviction on multiple counts. Of course, it is possible that Defendant could face *more* than the five-year statutory maximum if the Court were to determine that consecutive sentences are more appropriate than a concurrent one.

determination of competency is in parity with an expected sentence in the criminal proceeding, the Government may no longer be able to claim an important interest in prosecution").

Courts may also consider other circumstances, such as the nature of the alleged crime, public safety concerns, and the information available regarding a defendant's medical condition. *See, e.g.*, *White*, 620 F.3d at 419–22. As explained below, the Court finds that the special circumstances here are insufficient to outweigh the Government's important interest in forcibly medicating Defendant and bringing him to trial.

### a. Potential Credit for Time Served

In *Sell*, the Supreme Court observed that in the event a defendant has been confined for a lengthy period of time for which he would receive credit for any sentence ultimately imposed, this fact might lessen the Government's interest in his adjudication. 539 U.S. at 180. District courts in this Circuit have similarly recognized that the length of pretrial detention may lessen the importance of the Government's interest and that courts accordingly "must compare the time already served by the defendant to the length of any potential sentence." *See Ruark*, 2014 WL 4966913, at *8 (citation omitted). Other courts have determined that they may reliably consider a defendant's likely sentence by obtaining a calculation under the advisory sentencing guidelines. *See White*, 620 F.3d at 415; *see also United States v. Sledge*, No. 1:08-cr-9/RS-WCS, 2011 WL 635868, at *2 (N.D. Fla. Feb. 11, 2011) (relying on advisory sentencing guidelines range to determine the defendant's likely sentence).

Here, the parties appear to agree that 33 months is a reasonable upper-range estimate of the time it will take to restore Defendant's competency if the Court were to order involuntary medication. *See* Mot. at 5; Report at 13 n.5; Objection at 4. And Defendant claims that the applicable guideline range is 24–30 months. Objection at 5. As a result, Defendant argues that the 25 months he has already been in custody (for which he would receive credit for time served)—

when added to the upper-bound of the time estimated to restore him to competency (eight months)—would exceed the applicable guideline range. *Id.* at 5–6. Accordingly, Defendant maintains this constitutes a special circumstance militating against the Government's interest in forcibly medicating him. In response, the Government contends that the applicable guideline range is properly calculated to be 30–37 months, *see* Order at 10, a calculation that the Magistrate Judge appears to endorse in his Report. *See* Report at 13 n.5.

The Court need not determine which of the two proposed guideline ranges is correct to conclude that Defendant's potential credit for time served does not materially undermine the Government's interest in forcibly medicating him and bringing him to trial. For one thing, the Sentencing Guidelines are advisory; sentences are "not determined with certainty until after a defendant has been convicted and are not binding on the court." *Rodriguez*, 281 F. Supp. 3d at 1294. Because the Court is not bound by either of the parties' calculated ranges, the Court would be well within its statutory authority to increase Defendant's sentence, beyond the estimated 33-month term of confinement, in the event of a conviction. *See United States v. Gutierrez*, 704 F.3d 442, 451 (5th Cir. 2013) ("It is not appropriate either to require a district court to conduct a mock sentencing hearing and select a provisional sentence at a *Sell* hearing, or to prematurely speculate about a defendant's possible sentence in an interlocutory appeal. Accordingly, we follow the approach of several other circuits in comparing the time already served by [defendant] with the statutory maximum authorized for his indicted offenses.").

Indeed, 33 months reflects a period of just over half of the statutory maximum sentence the Court is authorized by statute to impose. Consequently, the Court finds that potential credit for

time served is insufficient to outweigh the Government's interest in forcibly medicating Defendant.[2]

### b. Nature of the Alleged Crime

Courts may also consider the nature of the alleged crime in analyzing whether other special circumstances exist militating against the Government's interest in forcibly medicating a defendant. *See White*, 620 F.3d at 413. Specifically, courts tend to focus on whether the alleged crime was violent in nature. *See*, *e.g.*, *White*, 620 F.3d at 419; *Gillis*, 2011 WL 7109362, at *6; *Sledge*, 2011 WL 635868, at *3. Here, the alleged offense involves threatening Tweets and placing over a thousand phone calls threatening federal law enforcement personnel working at multiple FBI facilities in South Florida. These threats caused federal agents and employees to fear for their safety. Accordingly, these allegations are sufficiently serious for the Court to find that the alleged offense does not lessen the Government's interest in involuntarily medicating Defendant.

### c. Public Safety Concerns

Public safety concerns may also be considered when determining whether the Government's interest in prosecuting a defendant is diminished. *See, e.g., White*, 620 F.3d at 419–20; *United States v. Grant*, No. 3:14-CR-148-J-34MCR, 2015 WL 13741550, at *7 (M.D. Fla. Aug. 27, 2015), *report and recommendation adopted as modified*, 3:14-CR-148-J-34MCR, 2015 WL 6769491 (M.D. Fla. Nov. 6, 2015). While it is true that Defendant is currently confined at FMC Butner and does not present an active threat to the public, if the Court accepted Defendant's

---

[2] The Court also notes that officials at FMC Butner, upon learning of these proceedings, have provided the Court with an estimate of the competency evaluation period. *See* Letter. The Warden at FMC Butner has concluded that the restoration process could be completed by March 2024, a date well within the eight-month estimate upon which Defendant bases his Objection. *Id.* This would reduce the overall period of incarceration by an estimated 3 months from the 33-month term suggested by the parties. Moreover, the Court agrees with the Magistrate Judge that in the event Defendant is not restored to competency within eight months after the entry of this Order, the Court is willing to reconsider the need to involuntary medicate Defendant. *See* Report at 13.

time-served argument, he would be back in the community by the middle of next year having received no treatment—and without having answered for his crimes.  Indeed, given Defendant's lack of competency, there is a significant possibility he may repeat the same threatening behavior if released.  These circumstances do not constitute the kind of minimal public safety concerns that other courts have relied on in finding a reduced governmental interest in bringing additional proceedings against a defendant.  *See Grant*, 2015 WL 13741550, at *7 (finding that non-violent, non-threatening nature of defendant's conduct combined with her confinement in a federal correction institution mitigated the Government's interest in bringing additional proceedings against defendant).

### d. Information Regarding Medical Condition

Finally, courts have also looked to known information about a particular medical condition in determining the strength of the Government's interest in involuntarily medicating a defendant. *See White*, 620 F.3d at 421.  This inquiry usually focuses on experts' knowledge about the particular medical condition at issue and their estimates of the likelihood that a particular patient will be responsive to treatment.  *Id.* (finding doctor's testimony that she was unsure how defendant would respond to antipsychotic medications given the rarity of her psychiatric condition lessened the Government's interest); *Grant*, 2015 WL 13741550, at *7 (finding dearth of information regarding defendant's medical condition lessened the Government's interest).

Here, there is no dearth of information concerning Defendant's condition of schizoaffective disorder and the efficacy of antipsychotic medication in treating this condition.  In fact, the Report specifically notes the strong likelihood that Defendant will be responsive to treatment:

> According to Dr. Cloutier, studies he has considered demonstrate restoration or response rates (to antipsychotic medication) of roughly 75% (low 70s to high 80s) for inmates with psychosis. The response rate for patients with schizoaffective disorder (the

> Defendant's illness) is actually around 81%. Those in the studies that were not restored to competency (roughly 25-30%) often had characteristics such as hormonal issues, neurocognitive issues, dementia, or a long duration of receiving no treatment. The Defendant does not suffer from the types of conditions seen in the group that was not restored to competency. Dr. Cloutier has considered the fact that the Defendant has not received antipsychotics in a long time, but he believes the Defendant is likely to respond to treatment, especially because the Defendant does not have the co-morbid features or illnesses (like neurocognitive deficits) that those in the group not restored to competency had.

Report at 8. Thus, as the Report makes clear, Defendant has been diagnosed with a known and understood schizoaffective disorder. Moreover, antipsychotic medication of the type recommended here has been used successfully to treat individuals with Defendant's same diagnosis. *Id.* Accordingly, the Court finds that there is not a lack of medical information concerning Defendant's condition that militates against the Government's interest in forcibly medicating him and bringing him to trial.

## II. Defendant's Special Circumstance Objection

The Court now turns to Defendant's sole objection to the Report. Defendant asks the Court to "find that the government's interest in involuntarily medicating him is outweighed by the significant amount of time he has served and will continue to serve." Objection at 7. However, as explained above, the parties' dispute regarding the correct calculation under the Sentencing Guidelines is premature, as this range is purely advisory in nature. Even if the most conservative estimate of Defendant's treatment timeline materializes, he will still have only been confined for 33 months—just over half of the five-year statutory maximum sentence for the offense in question. Thus, Defendant's potential credit for time served is insufficient to outweigh the Government's interest in forcibly medicating him to restore competency and enable Defendant to stand trial. Further, as analyzed herein, none of the other potential factors that might lessen the Government's

interest in forcibly medicating Defendant are present here. Defendant's Objection is therefore overruled.

## CONCLUSION

Based on the foregoing, and having carefully reviewed the record, the Report, and Defendant's Objection, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Magistrate Judge Jared M. Strauss's Report and Recommendation on the Government's Motion for an Order Requiring the Involuntary Treatment of the Defendant to Restore the Defendant's Competency, [ECF No. 83], is **AFFIRMED AND ADOPTED** as supplemented and modified by this Order.

2. The Government's Motion for an Order Requiring Involuntary Treatment of Defendant to Restore Defendant's Competency, [ECF No. 75], is **GRANTED**.

3. Defendant's Objection to the Magistrate Judge's Report and Recommendation, [ECF No. 86], is **OVERRULED.**

4. In the event that Defendant again refuses to take the antipsychotic medication recommended by medical professionals at FMC Butner, those medical professionals are hereby authorized to treat Defendant, without his consent, with the antipsychotic Haloperidol (Haldol) and any medically necessary adjunctive medications for the purpose of restoring Defendant to competency. FMC Butner shall administer this medical treatment consistent with prevailing medical standards and the treatment plan that Dr. Cloutier presented to this Court.

5. No later than April 5, 2024, the director of FMC Butner shall file a report with this Court regarding the treatment of Defendant with antipsychotic medication, and shall state therein whether, in the opinion of mental health professionals, Defendant has been restored to competency. If the treating professionals believe that Defendant continues to suffer from a mental disease or defect that renders him incompetent to the extent that he is unable to understand the

nature and consequences of the proceedings against him or to properly assist in his defense, then they shall advise whether they believe there is a substantial probability that within a reasonable period of time (to be suggested by the treating professionals), Defendant may be restored to competency, in which case the Court will promptly set this matter for a hearing. FMC Butner medical professionals shall continue their treatment of Defendant if, in their professional opinions, they consider it medically appropriate pending an order from the Court that determines the length of any extended period of treatment.

6. If at any point FMC Butner medical professionals determine that Defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to properly assist in his defense, the director of FMC Butner shall promptly provide a certificate to that effect to the Clerk of this Court, which the Clerk shall immediately file on the docket in this matter. The director shall also transmit a copy of that certificate to Defendant's and Government's counsel. Upon receipt of that certificate, the Court will promptly schedule a hearing to assess whether Defendant is competent to participate in these proceedings.

7. Defendant shall not be discharged from FMC Butner and returned to a Bureau of Prisons facility in this District without prior notice to, and approval of, this Court.

**DONE AND ORDERED** in Miami, Florida, this 24th day of October, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc: A. Klepach/K. Guthrie/M Hyman, Assistant United States Attorneys
E. Cruz, Defendant's Attorney and B. Wax, Defendant's Guardian Ad Litem
T. Scarantino, FMC Butner Complex Warden